UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHARLES HAWKINS,

                     Petitioner,                           Case No. 11-cv-11250

v.                                                   HON. AVERN COHN

BLAINE C. LAFLER,

                     Respondent.
_____/

**MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

I. Introduction

This is a habeas case filed under 28 U.S.C. § 2254. Petitioner Charles Hawkins

(Petitioner), proceeding pro se, was convicted of second-degree murder, M.C.L. §

750.317, felon in possession of a firearm, M.C.L. § 750.224f, carrying a concealed

weapon, M.C.L. § 750.227, and commission of a felony with a firearm. M.C.L. As a

result of these convictions, Petitioner was sentenced as a third-time habitual felony

offender to 50-to-75 years for the murder conviction, as well as lesser terms for the

firearm convictions. Petitioner says he is incarcerated in violation of his constitutional

rights. He raises eight claims which will be discussed below. As will be explained, the

petition will be denied because the claims either lack merit or are procedurally barred

from review.

II. Background

A. Factual

The following facts leading to Petitioner's convictions follow.

On June 18, 2008, seventeen-year-old Anthony Willis was shot and killed in front of a Detroit housing complex.  The shooting occurred during an altercation and was witnessed by several bystanders who knew the participants.  The testifying eyewitnesses largely agreed on the basic circumstances of the shooting.  Willis and another young man, Bobby Lindsey, were arguing outside the housing complex, prompting a small crowd to gather.  Petitioner was called to help Lindsey.  When he arrived, words were exchanged between Petitioner and Willis.  Petitioner then shot Willis in the leg.  Willis ran into his house.  The bullet had severed his femoral artery, and as a consequence Willis bled to death.

Tamika Winfield testified that she lived in the complex and knew the individuals involved in the incident.  She said she was in the crowd and saw Willis and Lindsey exchange threatening words.  She testified that when Willis saw Petitioner, Willis told Petitioner "your old ass can get it too."  Petitioner then pulled out a handgun and said, "What the fuck you say now?"  Winfield further testified that as Willis turned to run, Petitioner shot him the back of the leg.  After the shooting, Petitioner walked to his car, threw the gun in the engine compartment, covered his licence plate with a piece of cloth, and drove away.  Winfield further testified that she saw Willis pace back in forth in front of his house while his leg was bleeding.

Timothy Moore testified he saw Willis and Lindsey arguing, but he did not see either with a weapon.  Moore said he saw Petitioner arrive and heard Willis threaten to beat him.  Moore further testified that his back was turned when he heard a gunshot. When Moore turned around, he saw Petitioner holding a handgun and Willis running. Moore also said that he saw Petitioner fire at Willis a second time; he thought Petitioner

missed.

Bernard Wilson and Jerry Smith testified to similar accounts of the shooting. Both Wilson and Smith testified that Willis was shot at a second time as he ran away and that Willis did not appear to be armed with a weapon.

Another set of eyewitnesses, however, testified that Willis appeared to be armed prior to the shooting. Keith Hill testified that he saw Willis reach for a gun under his shirt just before Petitioner shot him. Hill also testified that the police refused to talk to him at the scene. Latisha Lindsey likewise testified that Willis reached for something at his side before he was shot, but she did not see what it was. Brenda Lindsey similarly described Willis patting himself as if he was looking for something just prior to being shot. She also testified that Willis had threatened to shoot her son prior to the altercation.

Petitioner made a statement shortly after his arrest while being transported to the police station. In the statement, admitted at trial, Petitioner told a police officer that he aimed at Willis' buttocks. Petitioner also said that he did not intend to kill Willis and only shot him because Willis pulled a gun. A search of Willis' house and surroundings did not uncover any firearm.

### B. Procedural

Following his conviction and sentence, Petitioner filed a direct appeal in the Michigan Court of Appeals, raising the following claims:

I. Verdicts of guilty based upon insufficient evidence constituted a denial of due process.

II. Sentences imposed violated constitutional guarantees against cruel and/or unusual punishment.

3

Petitioner filed a pro se supplemental brief, raising the following additional claims:

I. Defendant-Appellant was denied due process of law and his conviction should be reversed because the prosecution failed to establish that Defendant-Appellant's intent to kill or maim the victim, also that witness'es [sic] testified that they tried to stop the bleeding but the victim would not stay seated thereby the prosecutor failed to establish that the Defendant-Appellant intended to kill the victim, wherefore trial counsel was ineffective in violation of the Sixth and Fourteenth Amendments, as well Const 1963, art. 1, §§ 17, 20.

II. Defendant-Appellant was denied the effective assistance of trial counsel where counsel failed to investigate the Defendant-Appellant's defense, or to retain a medical expert to testify as to the victim and others assistance which aided in the victims [sic] death.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion without oral argument.  People v. Hawkins, 2010 WL 673358 (Mich. Ct. App. Feb. 25, 2010).  The Michigan Supreme Court denied leave to appeal.  People v. Hawkins, 487 Mich. 856 (2010).

Petitioner then filed a petition for habeas relief in this Court.  (Doc. 1).  After filing, the Court issued an order granting Petitioner's request to stay the case and hold it in abeyance so he could present the state courts with a new set of claims.  (Doc. 5).

Petitioner then filed a motion for relief from judgment in the trial court, raising the following claims:

I. Defendant was denied his Sixth Amendment right to effective assistance of appellate counsel where counsel failed to raise several meritorious claims on direct review.

II. Defendant was denied his Sixth and Fourteenth Amendment right to effective assistance of counsel and due process of law.

III. Defendant was denied his Fifth Amendment right to be free from self-incrimination and Fourteenth Amendment right to due process was violated where Defendant was not given his Miranda warning before given [sic] a statement after being arrested which was used against him in Court.

4

IV. Defendant was denied his Sixth and Fourteenth [sic] right to a fair trial and due process when the prosecutor committed misconduct.

V. Defendant was denied his Sixth and Fourteenth Amendment right to a fair trial and due process where the trial court erroneously instructed the jury to change its verdict which had been read into the record.

VI. Cause and prejudice.

The trial court denied the motion for relief from judgment under Michigan Court Rule 6.508(D)(3) and for lack of merit.  Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals.  The Court of Appeals denied the application for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).  People v. Hawkins, No. 308456 (Mich. Ct. App. Aug. 24, 2012).  The Michigan Supreme Court also denied review.  People v. Hawkins, 493 Mich. 920 (2012).

Petitioner then returned to this Court and filed an amended petition.  (Doc. 8).  It raises the following claims: (1) sufficiency of the evidence; (2) Petitioner's trial counsel was ineffective for failing to argue that the victim's conduct after being shot caused his own death; (3) Petitioner's lengthy sentence violates the Eighth Amendment; (4) Petitioner was denied the effective assistance of appellate counsel; (5) Petitioner's counsel failed to raise objections at trial; (6) Petitioner was not given his Miranda warnings prior to giving a statement to police; (7) prosecutorial misconduct; and (8) the trial court erroneously instructed the jury to change its verdict.

### III.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)(per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The

Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford, 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.

7

IV.  Discussion

A.  Sufficiency of the Evidence

1.

In his first claim, Petitioner argues that the evidence was insufficient evidence to sustain his murder conviction.  Specifically, he says there was insufficient evidence to prove that he acted with malice when he shot Willis.  He also argues that the evidence proved that he acted in self-defense.

2.

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable

8

application of the Jackson standard. See Cavazos v. Smith, 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality."  Coleman v. Johnson, 132 S.Ct. 2060, 2065, 182 L. Ed. 2d 978 (2012).

3.

The Michigan Court of Appeals rejected this claim, explaining:

> Several witnesses testified that defendant shot at the victim with a large caliber gun as the victim ran toward his house. Many of the witnesses were in close proximity to the victim when defendant shot at him.  According to several witnesses, defendant continued to follow the victim and aimed at him again before firing a second shot.  The jury could reasonably infer that defendant's act of firing a large caliber gun at the victim under these circumstances represented an obvious disregard of life-endangering consequences.  Further, although defendant presented witnesses who claimed that defendant produced his gun after seeing the victim reach for a gun, several other witnesses testified that defendant was the only person who had a gun, and that the victim did not motion like he had a gun before he was shot. "The credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the prosecutor's favor."  Harrison, supra at 378, 768 N.W.2d 98. Therefore, viewed in the light most favorable to the prosecution, the evidence was sufficient to establish defendant's intent to commit second-degree murder, and to disprove defendant's claim of self-defense, beyond a reasonable doubt.

People v, Hawkins, 2010 WL 673358 at *1.

4.

The Court of Appeals decision did not result in an unreasonable application of the Jackson standard.  To establish "malice" under Michigan law, a prosecutor must prove the defendant acted with 1) an intent to kill, 2) an intent to commit great bodily harm, or 3) an intent to do an act in wilful disregard of the likelihood that the natural tendency of

9

the act is to cause death or great bodily harm. People v. Roper, 286 Mich. App. 77, 84 (Mich. App. 2009).

Viewing the evidence most favorably to the prosecutor, as the Jackson standard instructs, the evidence at Petitioner's trial allowed a rational juror to find beyond a reasonable doubt that Petitioner acted with malice when he shot Willis. The evidence showed that Petitioner shot Willis twice with a high-caliber handgun. Even if the jury accepted Petitioner's statement that he only intended to shoot Willis in the buttocks, it could still find that such an action satisfied the malice element.

Petitioner, however, says that the evidence indicated that he acted in self-defense. He relies on the testimony of some of the eyewitnesses who suggested that Willis might have been reaching for a gun. This argument does not carry the day. . First, as stated above, the standard requires a reviewing court to view the evidence most favorably to the prosecution. So viewed, the jury could have accepted as true the witnesses who testified that Willis was unarmed because they were neutral bystanders, and it could have found less credible the ones who testified otherwise because they were connected to Petitioner. In any event, a federal court does not redetermine the credibility of the witnesses whose demeanor was observed at trial. Marshall v. Lonberger, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. Neal v. Morris, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. Matthews v. Abramajtys, 319 F. 3d 780, 788 (6th Cir.2003).

Second, as a factual matter, several witnesses testified that Petitioner shot Willis

10

while he was running away.  Accepting this testimony as true, a reasonable juror could easily conclude beyond a reasonable doubt that Petitioner did not act in self defense when he shot at a fleeing Willis.

In sum, Petitioner's first habeas claim is without merit.

### B.  Ineffective Assistance of Counsel

#### 1.

In his second claim, Petitioner contends that his trial counsel was ineffective for failing to raise a defense centered on the idea that Willis would not have died if he would have taken more immediate action to save his own life.

#### 2.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner's counsel was ineffective. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. Id. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial. Id.

With respect to the performance prong, a petitioner must identify acts that are "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.  The Court's scrutiny of counsel's performance is viewed through a highly deferential lens. Id. at 689.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

11

judgment. Id. at 690. And it is the petitioner who bears the burden of overcoming the

presumption that his counsel's actions constituted sound trial strategy. Id. at 689.

To satisfy the prejudice prong under Strickland, a petitioner must show that

"there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different." Strickland, 466 U.S. at 694.  A reasonable

probability is one that is sufficient to undermine confidence in the outcome. Id.  "On

balance, the benchmark for judging any claim of ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the adversarial process that

the [proceeding] cannot be relied on as having produced a just result." Id. at 686.

3.

The Michigan Court of Appeals denied relief on this claim, explaining in relevant

part:

> Although defendant's argument is not clearly presented, he seems to
> suggest that defense counsel should have consulted a medical expert to
> determine whether the victim would have died if he had not paced back and forth
> after he was shot.  This argument implicates the causation element of murder.
> As indicated previously, causation is an essential element of second-degree
> murder. Smith, 478 Mich. at 70, 731 N.W.2d 411.  The causation element is
> comprised of two components: factual cause and proximate cause.  People v.
> Schaefer, 473 Mich. 418, 435, 703 N.W.2d 774 (2005), overruled in part on other
> grounds in People v. Derror, 475 Mich. 316, 334, 715 N.W.2d 822 (2006).  Here,
> defendant's argument does not implicate the factual cause component of
> causation.  That is, defendant does not challenge the evidence that he shot the
> victim in the leg, striking the victim's femoral artery, nor does he dispute that this
> act resulted in the victim's death, i.e., that the victim would not have died but for
> being shot in the leg.  See Schaefer, supra at 435-436, 703 N.W.2d 774.
> Instead, defendant's argument implicates the proximate cause component of
> causation.  Defendant contends that defense counsel was ineffective for failing to
> present evidence that conduct by the victim or others after the victim was shot
> somehow aided in the victim's death. In Schaefer, the Court explained:
>
> > For a defendant's conduct to be regarded as a proximate cause, the
> > victim's injury must be a "direct and natural result" of the defendant's
> > actions. In making this determination, it is necessary to examine whether

12

there was an intervening cause that superseded the defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken. If an intervening cause did indeed supersede the defendant's act as a legally significant causal factor, then the defendant's conduct will not be deemed a proximate cause of the victim's injury.

The standard by which to gauge whether an intervening cause supersedes, and thus severs the causal link, is generally one of reasonable foreseeability. For example, suppose that a defendant stabs a victim and the victim is then taken to a nearby hospital for treatment. If the physician is negligent in providing medical care to the victim and the victim later dies, the defendant is still considered to have proximately caused the victim's death because it is reasonably foreseeable that negligent medical care might be provided. At the same time, gross negligence or intentional misconduct by a treating physician is not reasonably foreseeable, and would thus break the causal chain between the defendant and the victim.

The linchpin in the superseding cause analysis, therefore, is whether the intervening cause was foreseeable based on an objective standard of reasonableness. If it was reasonably foreseeable, then the defendant's conduct will be considered a proximate cause. If, however, the intervening act by the victim or a third party was not reasonably foreseeable-e.g., gross negligence or intentional misconduct-then generally the causal link is severed and the defendant's conduct is not regarded as a proximate cause of the victim's injury or death. [ Id. at 436-438, 703 N.W.2d 774 (footnotes omitted).]

In this case, defendant has not identified any conduct or event that might qualify as an intervening, superseding cause that would sever the causal link between defendant's conduct and the victim's death. The only act or event that defendant alludes to in his brief is the victim's conduct of pacing back and forth after he was shot. This involves ordinary, foreseeable conduct; it does not rise to a level that it could be considered either gross negligence or misconduct that would constitute a superseding event. Id. at 438-439, 703 N.W.2d 774. Defendant does not identify any other act or event involving either the victim or a third party that he contends might qualify as an intervening, superseding event. Because defendant has failed to show the existence of an act or event that might qualify as a possible superseding cause of the victim's death, there is no basis for concluding that defense counsel performed deficiently by failing to investigate or present evidence on this issue.

Furthermore, even if the victim's conduct of pacing back and forth could be considered a possible superseding event, defendant has not offered any evidence that this conduct actually had any contributory effect on the victim's death. The burden is on defendant to produce factual support for his claim of ineffective assistance of counsel. People v. Hoag, 460 Mich. 1, 6, 594 N.W.2d 57 (1999). Because defendant has not provided any factual support for his claim

that the victim's act of pacing contributed to his death, he has not shown that he was prejudiced by defense counsel's failure to investigate or present evidence on this issue.

People v. Hawkins, 2010 WL 673358 at *2-3.

4.

The Court of Appeals analysis and conclusion is reasonable.  Under Michigan law, a defendant's act must be the proximate cause of the victim's death for a homicide to constitute murder.  People v. Derror, 475 Mich. 316, 334 (2006).  This means that the victim's death must be a "direct and natural result" of the defendant's actions.  Id.  This element rarely presents a serious issue in shooting deaths.  That said, it is possible for an superceding cause to sever the causal link between a defendant's action and the victim's death.

Here, however, after Willis was shot, some of the eyewitnesses testified that he paced back and forth before succumbing to his wound.  Petitioner's argument is, in effect, that Willis' failure to take more immediate measures to staunch the blood loss constituted a superceding cause of his death.  Petitioner's counsel's decision not to challenge the causation element on this basis was a reasonable decision.  Willis' femoral artery was severed by the bullet, and he bled to death in a relatively short time before help could arrive.  There is no credible suggestion that Willis knew what action to take, or that he was capable of performing it, in order to save his life.  Nor is there any credible suggestion that Petitioner would have succeeded had Willis tried.  There is no reasonable probability that the result of his trial would have been more favorable had the jury been presented with such a defense.  Petitioner is therefore not entitled to habeas relief on this claim.

14

## C.  Eighth Amendment

### 1.

In his third claim, Petitioner contends that his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishments because his fifty-year minimum term for the murder conviction amounts to a life sentence given his age of forty-seven years old at the time.

### 2.

The United States Constitution does not require strict proportionality between a crime and its punishment.  See Harmelin v. Michigan, 501 U.S. 957, 965 (1991). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" Austin v. Jackson, 213 F. 3d 298, 302 (6th Cir. 2000) (internal quotation omitted).  "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  See United States v. Thomas, 49 F. 3d 253, 261 (6th Cir. 1995).

### 3.

Petitioner's sentence of 50-to-75 years for the second-degree-murder conviction was within the statutory maximum of life imprisonment for these offenses.  See M.C.L. §750.317.  Thus, the state court acted within its discretion in imposing Petitioner's sentence and there is no extreme disparity between petitioner's crime and sentence so as to offend the Eighth Amendment.  See, e.g. Chandler v. Jones, 813 F. 2d 773, 779 (6th Cir. 1987)(life sentence imposed pursuant to Habitual Criminals Act upon conviction for third-degree burglary not cruel and unusual punishment).  The court o of

appeals' similar conclusion that Petitioner's sentence does not violate the Eighth

Amended is correct.  Habeas relief is not warranted on this claim.

### D.  Claims Raised During Collateral Review

#### 1.

The remainder of Petitioner's claims, claims four through eight, were raised in his

state post-conviction proceeding.  They are:  (4) appellate counsel was ineffective; (5)

trial counsel failed to raise certain objections at trial; (6) Petitioner was not given his

Miranda warnings prior to giving a statement; (7) the prosecutor committed misconduct;

and (8) the trial court instructed the jury to change its verdict.  The ineffective assistance

of trial and appellate counsel claims are aimed at not objecting to and for not raising the

underlying claims on appeal.  These underlying claims are Petitioner's Miranda claim,

prosecutorial misconduct, and his claim regarding the verdict.

Respondent contends that these claims are barred by procedural default

because the state courts denied relief pursuant to Michigan Court Rule 6.508(D)(3)

which prohibits review of claims that could have been raised during a defendant's direct

appeal.  The Court agrees.

#### 2.

Federal habeas relief may be precluded on claims that a petitioner has not

presented to the state courts in accordance with the state's procedural rules. Wainwright

v. Sykes, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable

when a petitioner fails to comply with a state procedural rule, the rule is actually relied

upon by the state courts, and the procedural rule is "adequate and independent." White

v. Mitchell, 431 F.3d 517, 524 (6th Cir. 2006); Howard v. Bouchard, 405 F.3d 459, 477

16

(6th Cir. 2005); <u>Coleman v. Mitchell</u>, 244 F.3d 533, 539 (6th Cir. 2001).  The last explained state court judgment should be used to make this determination.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  <u>Id</u>.

The Michigan Supreme Court denied relief with respect to Petitioner's post-conviction claims pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  M.C.R. 6.508(D)(3).  The Court of Appeals for the Sixth Circuit, however, has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits.  See <u>Guilmette v. Howes</u>, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc).  Consequently, under <u>Guilmette</u>, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

Here, the trial court denied Petitioner's motion for relief from judgment not on procedural grounds by ruling that Petitioner had not shown prejudice under Michigan Court Rule 6.508(D)(3)(b) for his failure to raise the claims on direct appeal.  The state courts thus relied upon a procedural default to deny relief.  Accordingly, these claims are procedurally defaulted and barred from review unless Petitioner can overcome the

17

default.[1]  To do so, he must show cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Nields v. Bradshaw, 482 F.3d 442 (6th Cir. 2007); Gravley v. Mills, 87 F.3d 779, 784-85 (6th Cir. 1996).

3.

Petitioner asserts ineffective assistance of trial and appellate counsel as cause to excuse his default.  As noted above, Petitioner says trial counsel was ineffective for not objecting at trial and appellate counsel was ineffective for not raising the issues on appeal.  It is well-established, however, that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy .... Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Barnes, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be

---

[1]The trial court also rejected the claims on the merits, a point discussed further below.

18

overcome." <u>Monzo v. Edwards</u>, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. <u>Meade v. Lavigne</u>, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

As explained below, Petitioner has failed to show that by not objecting at trial and omitting the underlying claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. This is so because the defaulted claims lack merit for the reasons stated by the trial court in denying relief from judgment and as further discussed by Respondent in its answer to the amended petition.

4.

Although defaulted, the Court will briefly address the merits of the underlying claims. First, as to his <u>Miranda</u> claim, the record shows that Petitioner voluntarily made the statement to an arresting police officer and Petitioner failed to identify any questions posed by the police officer which would have lead Petitioner into making an incriminating statement. As such, there was no <u>Miranda</u> violation and the trial court was not unreasonable in concluding the same. As to his prosecutorial misconduct claim, the trial court found that the prosecutor did not improperly vouch for the credibility of any witness but simply commented on the fact that credibility was an issue for the jury. This conclusion is reasonable based on the record.

Finally, as to his claim that the trial court instructed the jury to change its verdict, the record shows that the jury checked the "not guilty" box of the verdict form with

respect to the first-degree murder charge. When the trial court read the verdict form, the jury foreperson immediately indicated that it intended to find Petitioner guilty of second-degree murder. The trial court handed the form back to the foreperson to check the appropriate box. The jury then was polled to ensure that the verdict of guilty of second-degree murder was accurate.

The initial miscue with the verdict form does not entitle Petitioner to any relief. It is certainly not a "dead-bang winner" issue that appellate counsel was obligated to raise on direct appeal. It is well established that the jury's verdict is not final until the "deliberations are over, the result is announced in open court, and no dissent by a juror is registered." United States v. Love, 597 F.2d 81, 85 (6th Cir.1979) (citing United States v. Taylor, 507 F.2d 166, 168 (5th Cir.1975)). Here, the jury's final verdict was accurate and not the result of any error or action by the trial court.

5.

Lastly, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. Murray v. Carrier, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. Schlup v. Delo, 513 U.S. 298, 324 (1995). Moreover, actual innocence means factual innocence, not mere legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998). Petitioner has made no such showing.

20

Overall, claims five through eight are barred by procedural default and lack merit Petitioner is not entitled to habeas relief on any of these claims.

## V.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473 (2000).  Because reasonable jurists could not conclude that the Court's dismissal of Petitioner's claims was debatable or wrong, Petitioner is not entitled to a certificate of appealability.

## VI.  Conclusion

Accordingly, for the reasons stated above, the petition is DENIED.  A certificate of appealability is also DENIED.  This case is DISMISSED.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: May 11, 2015
      Detroit, Michigan